| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>JOSE A. REY,<br><br>                        Debtor.<br>-------------------------------------------------------------x<br>JOSE A. REY,<br><br>                        Plaintiff,<br><br>      -against-<br><br>ROSARIO LAUREDA and<br>FREDERIC WALKER, ESQ.,<br><br>                        Defendants.<br>-------------------------------------------------------------x | **FOR PUBLICATION**<br><br>Case No. 95-15616-608<br><br>Chapter 7<br><br><br><br><br>Adv. Proc. No. 04-1416-608 |

## OPINION

APPEARANCES:

| | |
|---|---|
| David J. Weiss, Esq.<br>666 Old County Road<br>Suite 700<br>Garden City, New York 11501<br>Attorney for Plaintiff | Frederic Walker, Esq.<br>220 East 76th Street<br>New York, New York 10021<br>Attorney for Defendant<br>Frederic Walker, pro se |

CARLA E. CRAIG
United States Bankruptcy Judge

1

This matter comes before this Court on the motion of Jose A. Rey (the "Debtor"), who seeks summary judgment in this adversary proceeding pursuant to Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

The Debtor asserts that a state court judgment obtained on October 18, 2004 by Rosario Laureda, through her attorney, Frederic Weiss (Ms. Laureda and Mr. Weiss, collectively, the "Defendants") is void because it violates the order of this Court, dated January 12, 1996 (the "Discharge Order"), discharging the Debtor of his debts pursuant to § 727 of the Bankruptcy Code (the "Code"). The Debtor seeks entry of an order declaring the state court judgment void; holding the Defendants in contempt for violation of the Discharge Order; and awarding attorneys' fees and punitive damages.

The Defendants assert that they had no knowledge of the Debtor's bankruptcy until they received the Debtor's motion to dismiss the state court proceeding in 2003, and that therefore the pre-petition debts to which the state court judgment relates are excepted from discharge pursuant to § 523(a)(3) of the Code, and were properly found by the state court to be nondischargeable pursuant to §§ 523(a)(2)(A) and (B) and § 523(a)(4) of the Code. The Defendants assert that the Rooker-Feldman doctrine precludes this Court from reviewing the state court's determination that the pre-petition debts owed to Ms. Laureda by the Debtor are non-dischargeable.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §§ 1334(b) and 157(b)(2)(I) and the Eastern District of New York standing order of reference dated August 28, 1986. This opinion constitutes the Court's findings of fact and conclusions of law to

the extent required by Fed. R. Bankr. P. 7052.

## Facts

Based upon the submissions by the parties on this motion, it appears that the following facts are not in dispute.

Prior to filing for bankruptcy protection in 1995, the Debtor represented Ms. Laureda in several real estate matters as her attorney. During the course of their attorney-client relationship, Ms. Laureda made two loans to an entity controlled by the Debtor. (Laureda Aff. ¶ 5.)[1] On August 24, 1990, Ms. Laureda loaned $79,000 to Rey-San Realty Company ("Rey-San"), a real estate partnership in which the Debtor was a general partner. Id. On October 1, 1990, Ms. Laureda loaned an additional $20,000 to Rey-San. Id. In consideration of each of these loans, the Debtor caused Rey-San to issue mortgages and notes to Ms. Laureda secured by a commercial property Rey-San owned at 65-07 Woodhaven Boulevard, Rego Park, New York. Id. On January 4, 1993, these two mortgages and notes were consolidated into a single mortgage and note issued by Rey-San in favor of Ms. Laureda. Id. at ¶ 7.

Ms. Laureda asserts that the Debtor acted as her attorney in these loan transactions and that he assured her he would record the mortgages. Id. at ¶ 8. However, the mortgages were never recorded. (Doc. No. 14; Def. Mem. Opp. SMJ ¶ 3.)[2] The property securing Ms. Laureda's mortgage was already encumbered by two mortgages totaling more than $1 million. Id. The

---

[1] "Laureda Aff." refers to the Affidavit in Opposition, dated June 30, 2003, made by Rosario Laureda in connection with the state court action, which was submitted in support of the Debtor's summary judgment motion. It should be noted that the paragraph numbers in the Laureda Aff. are misnumbered, as there are two ¶ 5. The allegations described in the sentence preceding this footnote were taken from the second ¶ 5. All other paragraph references to the Laureda Aff. in this opinion are as they appear therein.

[2] "Doc." refers to documents listed on the bankruptcy court's docket, by docket number.

Debtor made regular payments of interest to Ms. Laureda on the loan through 1993 and thereafter made sporadic payments through 2001. (Doc. No. 13; Def. Aff. ¶ 9.)

On June 20, 1995, the Debtor filed a voluntary petition for relief under chapter 7 of the Code. The Debtor listed Ms. Laureda as an unsecured creditor on his petition pursuant to § 521(1) of the Code and Federal Rule of Bankruptcy Procedure 1007(a)(1). The clerk of this Court caused all listed creditors to be notified of the date the first meeting of creditors was to be held pursuant to § 341 of the Code and Federal Rule of Bankruptcy Procedure 2003(a). (Aff. of D. Weiss; Exhibit B.)[3] The notice set the first meeting of creditors for August 21, 1995 and the deadline to object to discharge or determine dischargeability of debts as October 20, 1995, which was subsequently adjourned to September 5, 1995. (Aff. D. Weiss, ¶ 11.)

Ms. Laureda claims that she never received notice of the Debtor's bankruptcy from the clerk's office or from the Debtor. (Laureda Aff. ¶ 11.) However, in an affidavit filed in the state court proceeding, Ms. Laureda stated that in August 1995, while in the Debtor's office, she saw a copy of a notice to creditors of the meeting of the Debtor's creditors pursuant to § 341 of the Code. Id. Ms. Laureda did not ask what this notice meant; however, her suspicions were aroused and she decided to attend the meeting. Id. When she arrived, the meeting had concluded and only the Debtor remained. Id. Ms. Laureda stated that she left the meeting without learning of the Debtor's bankruptcy. Id.

On January 12, 1996, the Debtor was granted a discharge pursuant to § 727 of the Code.

On May 14, 2003, the Defendants commenced an action in the Supreme Court, New York

---

[3] "Aff. of D. Weiss" refers to the Affirmation of David Weiss, dated December 22, 2004, submitted in connection with the Notice of Motion for Summary Judgment.

County, seeking to recover pre-petition loans made by Ms. Laureda to the Debtor, and seeking damages for mental distress and suffering. The Debtor moved to dismiss the case, asserting that Ms. Laureda's claims against the Debtor had been discharged in bankruptcy.

The state court denied the Debtor's motion to dismiss, holding that "the allegations in Laureda's Complaint establish that [the Debtor's] debt to her could qualify for exception to discharge under section 523(a)(2)(A) . . . (B) . . . and (4)." Laureda v. Rey, et al., No. 601527/03 (N.Y. Cty Nov. 28, 2003) (order denying summary judgment). The matter proceeded to trial and on October 20, 2004, the state court issued an opinion holding the pre-petition debts owing to Ms. Laureda by the Debtor were non-dischargeable in bankruptcy because § 523(a) of the Code "excepts from bankruptcy discharge, debt incurred through false misrepresentation, fraud and/or abuse of a fiduciary relationship." Laureda v. Rey, et al., No. 601527/03 (N.Y. Cty Oct. 18, 2004).

On June 25, 2004, this case was reopened on the Debtor's motion, and this adversary proceeding was commenced on August 4, 2004.

### Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuine issue exists "unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50.

"If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted).  If the movant meets this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials."  In re: Jarrell, 251 B.R. 448, 450-451 (Bankr. S.D.N.Y. 2000), citing  Matsushita Elec. Indus, Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 265 (1986).

## Discussion

The Defendants assert that the Rooker-Feldman doctrine deprives this Court of subject matter jurisdiction to consider this case.  "The Rooker-Feldman doctrine provides that 'lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment'."  In re Ivani, 308 B.R. 132, 136 (Bankr. E.D.N.Y. 2004), citing Neshewat v. Salem (In re Salem), 290 B.R. 479, 482 (S.D.N.Y. 2003); Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998).  The doctrine was established by two Supreme Court cases (Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)), and is predicated upon 28 U.S.C. § 1257, pursuant to which the United States Supreme Court is the only federal court which may hear appeals from

determinations of state courts.

The <u>Rooker-Feldman</u> doctrine requires that its applicability be determined before a court considers other defenses. <u>Harris v. N.Y. State Dep't of Health</u>, 202 F. Supp. 2d 143, 160 (S.D.N.Y. 2002), <u>citing</u> <u>GASH Assocs. v. Village of Rosemont, Ill.</u>, 995 F.2d 726, 728-729 (7th Cir. 1993) (holding the district court erred by dismissing the case on the basis of res judicata because <u>Rooker-Feldman</u> applied and thus deprived the court of jurisdiction); <u>Centres, Inc. v. Town of Brookfield</u>, 148 F.3d 699, 703 (7th Cir. 1998) ("If <u>Rooker-Feldman</u> applies, a res judicata claim must not be reached."); <u>Garry v. Geils</u>, 82 F.3d 1362, 1365 (7th Cir. 1996).  The <u>Rooker-Feldman</u> doctrine is distinct from collateral estoppel and res judicata; however, the <u>Rooker-Feldman</u> doctrine and preclusion rules produce a similar outcome: the plaintiff is barred from bringing the case in federal court.

There is an exception to the <u>Rooker-Feldman</u> doctrine.  Courts have held that when a state court judgment is void, <u>Rooker-Feldman</u> does not apply.  <u>In re Dabrowski</u>, 257 B.R. 394, 406 (Bankr. S.D.N.Y. 2001).  Section 524(a) of the Code provides, in relevant part:

> A discharge in a case under this title:
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . .

Thus, a state court judgment is void when it is entered either before or after the claim underlying the judgment is discharged.  <u>Id.</u>, <u>citing</u> <u>In re Mario Cruz and Mercedes Cruz</u>, 254 B.R. 801, 805

(S.D.N.Y. 2000) (Rooker-Feldman and preclusionary doctrines inapplicable if § 524 of the Code voided a judgment that was a determination of the personal liability of the debtor with respect to a discharged debt); In re Pavelich, 229 B.R. 777, 782-783 (B.A.P. 9th Cir. 1999) (when the state court construes the bankruptcy discharge incorrectly, its judgment is void ab initio under § 524(a)(1) to the extent it violates the discharge order); Lawrence P. King, Collier on Bankruptcy, 524.02[1] at 524-13  (Matthew Bender, 15th Ed. 2004)("[a] bankruptcy court can find that a postpetition state court judgment is void despite the full faith and credit normally given to state court judgments").

"The rationale for the exception, in part, is that because a void judgment is null, vacating such a judgment is a mere formality and does not intrude upon the notion of mutual respect in federal-state interests."  In re Dabrowski, 257 B.R. at 406, citing Pavelich, 229 B.R. at 783; In re James, 940 F.2d 46, 52 (3d Cir 1991).  "A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment." Pavelich, 229 B.R. at 783.

As the court noted in Pavelich,

> With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge.  Indeed, discharge in bankruptcy is a recognized defense under state law.
>
> * * *
>
> But since 1970 the state court's power has been subject to the unusual limitation that stems from statutory voidness which now appears at § 524(a)(1).  While the power to decide an issue ordinarily connotes the power to decide it incorrectly, with any erroneous result being enforceable unless corrected on appeal, § 524(a)(1) statutory voidness commands a different result.
>
> If the state court construes the discharge correctly, its judgment

> will be enforced and not be vulnerable to being upset by means
> outside the normal appellate channels. If, however, the state court
> construes the discharge incorrectly, then its judgment may be void
> to the extent it offends the discharge and subject to collateral attack
> in federal court.

Id. at 783. The issue, therefore, is whether the state court judgment entered against the Debtor on October 18, 2004 violates the discharge granted to the Debtor in 1996, or whether the state court properly held that the pre-petition debts owing to Ms. Laureda were non-dischargeable.

The state court concluded that Ms. Laureda's claim was nondischargeable pursuant to § 523(a), which provides exceptions to dischargeability for (among other things) debts incurred through false misrepresentation, fraud, or defalcation by a fiduciary. Laureda v. Rey, et al., No. 601527/03 (N.Y. Cty Oct. 18, 2004). Section 523(c)(1) of the Code states that determinations of nondischargeability under § 523(a)(2), (4), (6) or (15) must be made by the bankruptcy court prior to discharge or the debt will be discharged under § 727. 11 U.S.C. § 523; In re Berry, 190 B.R. 486, 492 (Bankr. D. Ga. 1995).

The prevailing interpretation of this provision, by courts in this and circuits, is that federal courts have exclusive jurisdiction to determine whether an exception to dischargeability exists pursuant to § 523(a)(2), (4), (6), or (15). Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (Bankr. S.D.N.Y. 1999); In re Massey, 228 B.R. 686, 690 (Bankr. S.D. Ind. 1998), citing Brown v. Felsen, 442 U.S. 127, 60 L. Ed. 2d 767, 99 S. Ct. 2205 (1979); Collier on Bankruptcy, 523.03, 523-18, citing 1983 Advisory Committee Note to Fed. R. Bankr. P. 4007.[4]

---

[4] The Defendants point to the Supreme Court's decision in Grogan v. Garner, 498 U.S. 279; 111 S. Ct. 654; 112 L .Ed. 2d 755 (1991), to support their contention that federal courts are bound by preclusion principles with respect to determinations made by state courts in proceedings to determine the dischargeability of debts. (Doc. No. 13; Def. Aff. ¶ 17). The Defendants assert the Supreme Court's decision in Grogan means this Court must adhere to the state court's decision even though this Court has exclusive subject matter jurisdiction. Id. The Defendants misread the Supreme Court's decision. Grogan addresses the evidentiary standard to be used by federal courts in

Thus, nondischargeability complaints under § 523(a)(2), (4), (6) and (15) must be brought in bankruptcy court within 60 days of the first date set for the meeting of creditors pursuant to § 341 of the Code, as provided in Rule 4007(c). Fed. R. Bankr. P. 4007; Berry, 190 B.R. at 492. Here, it is not disputed Ms. Laureda did not object to the Debtor's discharge within the applicable 60 day period.

The Defendants argue that the state court had jurisdiction to determine the dischargeability of Ms. Laureda's claim against the Debtor under the proviso in the first sentence of § 523(c)(1), which creates an exception to the exclusive jurisdiction granted to the bankruptcy court if § 523(a)(3)(B) is applicable. Section 523(a)(3)(B) states in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit --
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

The Defendants assert that § 523(a)(3)(B) is an exception to the grant of exclusive jurisdiction to federal courts to determine dischargeability pursuant to § 523(a)(2), (4) and (6), applicable when a creditor is unaware of a debtor's bankruptcy. (Doc. No. 13; Def. Aff. ¶ 22.) The Defendants reason that since the state court has concluded Ms. Laureda did not have knowledge of the Debtor's bankruptcy, it therefore had concurrent jurisdiction with this Court to

---

determining whether the elements of fraud under § 523 are present, and does not stand for the proposition that state courts have jurisdiction to determine whether a debt is nondischargeable by reason of fraud.

determine the dischargeability of the pre-petition debts, and that this Court should not disturb that judgment pursuant to Rooker-Feldman.[5] Id. The Defendants' interpretation of § 523(a)(3) is incorrect.

The language in § 523(a)(3) is quite clear: it applies only to debts "neither listed nor scheduled" on the Debtor's petition pursuant to § 521(1). Ms. Laureda, together with her correct address, was listed on the Debtor's petition; therefore, Ms. Laureda may not avail herself of the protection offered to unlisted creditors by § 523(a)(3). In re Robinson, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998)("[T]he depositing into the mail system of a properly addressed and stamped letter creates a rebuttable presumption of receipt by the party to whom the letter was addressed."); Cablevision Systems Corp. v. Malandra (In re Malandra), 206 B.R. 667, 672-73 (Bankr. E.D.N.Y. 1997), citing Hagner v. United States, 285 U.S. 427, 430, 76 L. Ed. 861, 52 S. Ct. 417 (1932)). "A debtor may rely on the Court's certificate of mailing to invoke the presumption of receipt." In re Robinson, 206 B.R. at 673.

Alternatively, the Defendants argue that whether the debt owed to Ms. Laureda was properly listed on the Debtor's petition is an issue of fact to be determined. (Doc. No. 13; Def. Aff. ¶ 18.) The Defendants note the Debtor listed the pre-petition debts owing to Ms. Laureda on a schedule of unsecured debts rather than a schedule of secured debts. Id. However, this was a correct listing of her claim, because (as all parties agree) the mortgages given to her by the Debtor were never recorded. Ms. Laureda also stated she did not receive notice from the clerk's

---

[5] The Defendants assert that the state court necessarily determined Ms. Laureda did not receive notice of the Debtor's bankruptcy filing. However, the state court decision does not make any mention of § 523(a)(3)(B) at all and certainly did not specifically find that Ms. Laureda did not receive notice of the Debtor's bankruptcy petition. In any event, as discussed in this opinion, determinations made by the state court are not given preclusive effect here as the judgment of the state court is void ab initio.

office of the § 341 meeting. (Laureda Aff. ¶ 6.) This unsubstantiated assertion is insufficient to rebut the presumption of receipt that arises from the certificate of mailing, or to create any issue of fact in this regard. In re Robinson, 206 B.R. at 667, quoting Malandra, 206 B.R. at 673 ("The federal courts in New York...'hold quite uniformly that an affidavit of non-receipt is insufficient to rebut the presumption of receipt'"). But even if it were sufficient, Ms. Laureda's claim must fail because she has admitted that she had actual knowledge of the Debtor's bankruptcy case.

In GAC Enterprises v. Medaglia (In re Medaglia), the Second Circuit Court of Appeals held a creditor's due process rights were not violated by § 523(a)(3)(B), which states a creditor with notice or actual knowledge of a case may not claim an exception to a debtor's discharge. 52 F.3d 451, 455 (2d Cir. 1995) ("The argument that the 'actual knowledge' proviso of § 523(a)(3)(B) offends due process has been specifically rejected by at least four courts of appeals: Grossie v. Sam (In re Sam), 894 F.2d 778, 781-82 (5th Cir. 1990); In re Green, 876 F.2d 854, 856 (10th Cir. 1989); In re Price, 871 F.2d 97, 99 (9th Cir. 1989); In re Alton, 837 F.2d at 460. We agree with the reasoning of these cases.").

Ms. Laureda admitted in her state court affidavit that she thought the Debtor had commenced bankruptcy proceedings in August 1995 when she saw a notice pertaining to the Debtor's § 341 meeting and that she attended the meeting of creditors to "see what [it] was all about." (Laureda Aff. ¶ 11.) This constitutes actual knowledge of the Debtor's bankruptcy satisfying § 523(a)(3)(B).[6] Massa v. Adonna, et al. (In re Massa), 187 F.3d 292 (2d Cir. 1999);

---

[6] While the phrase "actual knowledge" is not defined in the Code, Black's Law Dictionary defines it as "direct and clear knowledge...knowledge of such information as would lead a reasonable person to inquire further." Ms. Laureda's admission she saw the notice of the § 341 meeting and attended the meeting (despite the fact that it was over when she arrived) demonstrates that she had actual knowledge of such information as would lead a reasonable person to inquire further of the Debtor's bankruptcy.

GAC Enterprises, 52 F.3d at 454; In re Alton, 837 F.2d at 460 (holding that the statutory language of § 523 "clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates").

As Ms. Laureda was listed on the Debtor's schedules, and as she had actual knowledge of the Debtor's bankruptcy case, she does not qualify as a creditor for whom § 523(a)(3)(B) applies. Because Ms. Laureda did not object to the Debtor's discharge within the statutorily prescribed time frame, the amounts owed by the Debtor to Ms. Laureda were discharged pursuant to the Discharge Order. For this reason, the state court judgment is void ab initio pursuant to § 524 of the Code.

The above analysis applies equally to the Defendant's arguments that this Court is barred from considering a challenge to the state court's decision by reason of collateral estoppel. (Def. Mem. of Law p. 9.) Just as a state court judgment issued in violation of the discharge is void and not entitled to deference under Rooker-Feldman, such a judgment will not be given preclusive effect. In re Cruz, 254 B.R. at 811; Maroney v. Bowman (In re Maroney), 195 B.R. 452, 454-455 (Bankr. D. Ariz. 1996)(holding that a void judgment cannot be the basis for *res judicata*).

### Damages

The Debtor requests that this Court award $9,975.00 in attorneys' fees incurred by the Debtor, as well as award punitive damages in an amount to be determined by this Court.

Pursuant to the "American Rule," the prevailing litigant is ordinarily not entitled to collect attorneys' fees from the loser. Watkins v. Guardian Loan Co. (In re Watkins), 240 B.R. 668, 680 (Bankr. E.D.N.Y. 1999), citing Alyeska Pipeline Service Co. v. Wilderness Society,

421 U.S. 240, 247; 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).  An exception to the "American Rule" applies when a statute specifically provides for the award of attorneys' fees.  <u>Id.</u>, <u>citing</u> <u>Brantley v. Weeks (In re Brantley)</u>, 116 B.R. 443, 449 (Bankr. D. Md. 1990).  Section 524 of the Code does not authorize damages for violations of a bankruptcy court's discharge order.  11 U.S.C. § 524; <u>Watkins v. Guardian Loan Co. (In re Watkins)</u>, 240 B.R. 668, 680 (Bankr. E.D.N.Y. 1999).

However, there are judicially created exceptions to the "American Rule."  Attorneys' fees may be awarded to a debtor "(1) when a defendant willfully disobeys a court order and (2) when a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Watkins</u>, 240 B.R. at 678, <u>citing</u> <u>In re Walker</u>, 180 B.R. 834, 849 (Bankr. W.D. La. 1995); <u>Brantley</u>, 116 B.R. 443, 449 (Bankr. D. Md. 1990).

While it appears that the Defendants knew of the Discharge Order, and that their acts in violation thereof were intentional, the facts of this case differ significantly from those presented in cases where courts have awarded attorneys' fees for a violation of a discharge injunction.  <u>See</u> <u>Watkins</u>, 240 B.R. at 678-679 (award of attorneys' fees appropriate where a creditor induced a debtor to execute a promissory note for $8,000, bearing 25% per annum interest, in consideration of a $4,000 loan as a means of having the debtor reaffirm its pre-petition obligation); <u>Walker</u>, 180 B.R. 849 (award of attorneys' fees appropriate where creditor disobeyed the post-discharge injunction for no other reason than to continue to vex debtors by its ongoing collection efforts and to oppress them).  The Debtor has not demonstrated that Defendants conduct rises to the level of bad faith or wanton or oppressive action.

It is also relevant that the costs associated with the state court action could have been significantly reduced for all parties, and the substantial amount of time spent by the state court on this matter could have been avoided, if the Debtor removed the state court action to this Court at the outset, or at least commenced this proceeding promptly after being sued in state court. See Fed. R. Bankr. P. 9020(a)(3). The Debtor was served with the summons and complaint in the state court action on May 14, 2003, yet did not move to reopen his bankruptcy case until June 25, 2004, or commence this adversary proceeding until August 4, 2004, after the case had proceeded to trial in state court. It is inappropriate to award attorneys' fees to a party whose choice to delay commencing this proceeding for over one year resulted in unnecessary multiplication of costs and waste of judicial resources of the state court.

Punitive damages are also inappropriate here. Although a bankruptcy court may, in its discretion, punish parties for contempt for violation of a discharge order, punitive damages are generally awarded in response to egregious credit misconduct. See Placid Ref. Co. v. Terrebonne Fuel & Lube (In re Terrebonne Fuel & Lube), 108 F.3d 609 (5th Cir., 1997) (holding a "bankruptcy court's decision to impose sanctions is discretionary"); Watkins, 240 B.R. at 680-681 (court, in its discretion, granted treble damages to Debtor for violation of discharge order).

Cases in which punitive damages have been awarded generally involve a financially sophisticated creditor seeking to take advantage of a debtor. E.g.,Watkins, 240 B.R. 668; Matter of Arnold, 206 B.R. 560 (Bankr. N.D. Ala. 1997); In re Walker, 180 B.R. 834 (Bankr. W.D. Va. 1995). In Watkins, for example, the court awarded punitive damages to the debtors against Guardian Loan Company ("Guardian"), a pre-petition lender, who lured the debtors into reaffirming a portion of their pre-petition debt without court approval. 240 B.R. at 683. After

the debtors had received their discharge, Guardian contacted them to see if they had any borrowing needs. Id. at 637. The debtors entered into a new loan agreement pursuant to which they borrowed $8,000, at 25% per annum interest, in exchange for a $4,000 advance from Guardian. Id. at 674-675. The other $4,000 the debtor borrowed was advanced in the form of a check payable to Guardian and was immediately deposited in Guardian's bank account. Id. The court found that this loan violated the discharge order and that the creditor's behavior was so egregious that it "shock[ed] the Court's conscience." Id. at 681.

The facts in this case are, if anything, the reverse: here, a sophisticated attorney, accused of taking advantage of a client, asserts the discharge as a defense. Under the circumstances, this Court declines to exercise its discretion to award punitive damages to the Debtor.

## Conclusion

For the foregoing reasons, the Debtor's motion for summary judgment is granted; the application for attorneys' fees and punitive damages is denied; and the Debtor is directed to settle an order and judgment consistent with this opinion.

Dated: Brooklyn, New York
April 27, 2005

*s/Carla E. Craig*
CARLA E. CRAIG
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Case No.  95-15616-608

    JOSE A. REY,                                              Chapter 7

                             Debtor.
-------------------------------------------------------------x
JOSE A. REY,                                                    Adv. Proc. No.  04-1416-608

                             Plaintiff,

        -against-

ROSARIO LAUREDA and
FREDERIC WALKER, ESQ.,

                             Defendants.
-------------------------------------------------------------x

## MAILING CERTIFICATE

        I, Vivian Greene, hereby affirm that on April 27, 2005 a copy of an Opinion was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

| | |
|---|---|
| David J. Weiss, Esq.<br>666 Old County Road<br>Suite 700<br>Garden City, New York 11501 | Frederic Walker, Esq.<br>220 East 76th Street<br>New York, New York 10021 |

Dated:  Brooklyn, New York
        April 27, 2005

                                          *s/Vivian Greene*
                                             Vivian Greene